UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH SCOTT, | ) | CASE NO.  1:12-cv-01163 |
| | ) | |
| Petitioner, | ) | |
| | ) | JUDGE PATRICIA GAUGHAN |
| v. | ) | |
| | ) | MAGISTRATE NANCY VECCHIARELLI |
| JOHN COLEMAN, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | Doc. Nos. 1, 16, 19 |

This matter is before the magistrate judge pursuant to Local Rule 72.2.

Petitioner, Joseph Scott ("Scott"), challenges the constitutionality of his conviction in the

case of *State v. Scott*, Case No. CR 505742 (Cuyahoga County 2008).  Scott filed a

petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("§ 2254") on May 10,

2012 in the United States District Court for the Northern District of Ohio.  Also before the

court are Scott's two motions for release from custody.  Docs. No. 16, 19.  For the

reasons set forth below, (1) all of Scott's first ground for relief[1] except that portion of this

ground pertaining to counts 13 and 16 of the indictment and the entirety of his third

ground for relief should be dismissed because the claims are beyond the court's subject

matter jurisdiction; (2) the portion of Scott's first ground for relief pertaining to counts 13

and 16 alleging a double jeopardy violation should be dismissed as procedurally

_____

[1] In his first ground for relief, Scott claims that his conviction was "by violation of due
process when the indictment failed to distinguish multiple identically worded counts."

defaulted; and (3) the remainder of Scott's grounds for relief pertaining to due process and ineffective assistance of trial counsel should be dismissed as without merit. Because Scott's arguments are either not cognizable, defaulted, or without merit, his motions for release from custody, doc. nos. 16, 19, should be denied and his petition should be dismissed.

I

The January 2008 term of the Cuyahoga County grand jury indicted Scott on seventeen counts, alleging the sexual abuse of two victims. The first seven counts of the indictment related to Scott's niece ("victim 1"), and the remaining counts related to Scott's grand-niece ("victim 2").  The charges in the indictment were as follows:

| Count | Charge | Date of Occurence |
|-------|--------|-------------------|
| 1 | Rape of a child under 13 | March 22, 1984-March 21, 1986 |
| 2 | Rape of a child under 13 | March 22, 1984-March 21, 1986 |
| 3 | Rape of a child under 13 | March 22, 1984-March 21, 1986 |
| 4 | Rape of a child under 13 | March 22, 1984-March 21, 1986 |
| 5 | Rape of a child under 13 | March 22, 1984-March 21, 1986 |
| 6 | Rape of a child under 13 | March 22, 1984-March 21, 1986 |
| 7 | Kidnaping | May 1, 1985-May 18, 1986 |
| 8 | Rape | September 28, 2007 |
| 9 | Gross sexual imposition | September 28, 2007 |
| 10 | Gross sexual imposition | September 28, 2007 |
| 11 | Rape of a child under 13 | September 27, 2007 |
| 12 | Rape of a child under 13 | September 27, 2007 |
| 13 | Gross sexual imposition | August 1, 2007-September 27, 2007 |
| 14 | Rape of a child under 13 | June 1, 2007-August 31, 2007 [2] |
| 15 | Rape of a child under 13 | September 1, 2007-November 30, 2007 |
| 16 | Gross sexual imposition | July 1, 2007-August 31, 2007 |
| 17 | Attempted rape | July 1, 2007-August 31, 2007 |

All counts except count 17 included sexually violent predator specifications.  Count 7,

---

[2]  The dates originally given in the indictment for counts 14 and 15 were September 1, 2007-August 31, 2007, an obvious typographical error.  The dates were changed to the dates given above by way of motion immediately before trial.

kidnaping, included a sexual motivation specification.  Scott pleaded not guilty to all

counts.

On February 13, 2008, the state provided Scott a bill of particulars which

described more specifically the sexual behavior alleged in each count, locations where

the sexual abuse was alleged to have occurred, and later dates on which the sexual

behavior was alleged to have occurred in counts 16 and 17.  *See* Bill of Particulars,

Answer, Exh. 80.

Trial began on March 27, 2008.  On that day, the trial court *sua sponte* deleted

the sexually violent predator specifications in counts 1-7.  The state appellate court

hearing Scott's direct appeal described the trial as follows:

{¶ 3} Victim 2 was 13 years old when she testified.  From October 2006 to
October 2007, she frequently stayed overnight at her grandmother's house
because her mother was attending nursing school.  Scott was typically there
during these occasions.  Victim 2 usually slept in her grandmother's room, along
with her grandmother.

{¶ 4} Victim 2 recalled that one night at her grandmother's house on East 84th
Street, when the victim was 11 years old, she awoke and saw Scott at the edge
of the bed.  She testified that Scott pulled his pants down, got on top of her,
pulled her gown up and underwear down, licked her vagina and her chest, and
then stuck his penis in her vagina.

{¶ 5} Victim 2 recalled another incident that occurred after her grandmother
moved to the Martin Luther King and Kinsman area.  Her grandmother moved in
April 2007.  Victim 2 testified that she went to sleep on a "pallet" on the floor in
her grandmother's room and that after her grandmother had fallen asleep, Scott
entered the room.  She said Scott was wearing overalls and he got on top of her
and stuck his penis in her vagina.  Victim 2 was 12 years old at the time of this
incident.

{¶ 6} Victim 2 testified that the last time Scott sexually assaulted her was on her
13th birthday, September 28, 2007.  She was sleeping on a couch, and a number
of other child relatives were sleeping in the vicinity on makeshift beds.  She
stated that Scott stuck his penis in her vagina.  At one point she turned away, but
Scott turned her back and penetrated her again.

3

{¶ 7} In June 2007, victim 2 attended a sleepover with several of her cousins at the home of Felicia Williams, a.k.a. "Aunt Pooky."  Williams is Scott's sister and victim 2's great aunt.  During the sleepover, the girls expressed a desire to go to a local store, and Williams was concerned because of the sexual predators living in her area.  A conversation ensued, and Williams asked her nieces if they knew what a sexual predator was and if anyone had touched them inappropriately.  Williams then spoke to each girl individually.  When Williams spoke to victim 2 and asked if any man made her feel uncomfortable, victim 2 responded by looking down and beginning to cry.  Upon further questioning, victim 2 confided to Williams that Scott had been sexually assaulting her.

¶ 8} Williams called Scott and told him that victim 2 said he had been bothering her and making her feel uncomfortable.  Williams told Scott that he needed to stop.  Scott became mad and hung up the phone.  Williams testified that when she eventually got back on the phone with Scott, he said he "didn't bother the girl," he "did nothing," and he "didn't f* * * her." Williams responded "who said anything about f* * *ing her."  Williams ultimately relayed the information to victim 2's mother.

{¶ 9} Victim 1 was 33 years old when she testified.  She testified that Scott, who is her uncle, sexually abused her when she was a child.  The sexual abuse began when she was eight or nine years old.  She testified that Scott lived with her family and that he would wake her and perform oral sex on her.  She stated this happened on more than ten occasions.  She provided detailed testimony concerning the last encounter, when she was nine or ten years old, when Scott performed oral sex on her.  She testified that Scott, for the first time, tried to put his penis in her vagina and that it hurt.  She eventually told her mother that Scott was bothering her, but her mother told her to "find it in her heart to forgive him."  Years later, in 2007, victim 1 became aware of the allegations regarding Scott and victim 2.  Thereafter, victim 1 made a statement to the police.

{¶ 10} Steven Lee Collins, a social worker with the Cuyahoga County Department of Children and Family Services ("CCDCFS"), testified that he investigated the sexual abuse allegations concerning victim 2.  He described the investigative process and explained the dispositions that may be reached at the end of the process, which include the three general dispositions of unsubstantiated, substantiated, and indicated.  In this particular matter, the disposition made was "indicated."  When asked to explain "indicated," Collins responded as follows: "Indication is how it was described to me and how I describe it to other individuals.  It's kind of the preponderance of the evidence.  We have a reason to believe that something happened.  We can't outright say beyond a shadow of a doubt that it did happen.  So, it's more preponderance of the evidence, so to speak."  The basis for Collins's disposition in this matter was "the interview with [victim 2], conversation with Detective Thompson, and the charges that were brought against Mr. Scott."

{¶ 11} Scott denied the allegations of sexual abuse.  He attributed the charges brought against him to intrafamily dissension.  He also testified that he was a disciplinarian toward the younger generations of the family.

*State v. Scott*, 2010 WL 2636607, at *1-*3 (Ohio App. July 1, 2010).

The jury returned verdicts of guilty on count 16 for gross sexual imposition and on count 17 for attempted rape, both relating to victim 2.  Scott was acquitted on counts 10-14, and the court declared a mistrial on counts 1-9 and 15 due to a hung jury.  The court sentenced Scott to five-years' imprisonment on count 16 and six years' imprisonment on count 17, the sentences to be served concurrently to each other.  The court also classified Scott as a tier II sex offender with respect to count 16 and as a tier III sex offender with respect to count 17.

Scott timely appealed his conviction and sentence.  He asserted eleven assignments of error in his appeal:

Assignment of Error I:
The trial court erred when it allowed the DCFS social worker to testify that the DCFS investigation indicated that Joseph Scott had engaged in sexual conduct with [A.R.].

Assignment of Error II:
The conviction for count sixteen must be vacated because count sixteen failed to allege a mens rea for the offense of gross sexual imposition and the jury was never instructed on the mens rea required for that offense.

Assignment of Error III:
The evidence is insufficient to sustain the conviction in count sixteen and seventeen.

Assignment of Error IV:
The convictions are against the manifest weight of the evidence.

Assignment of Error V:
Assuming arguendo, that the evidence is sufficient and the verdicts not against the manifest weight of the evidnece [sic], the indictment failed to adequately advise the defendant of the pending charges and ensure that he was tried for the

5

same offense allegations upon which the grand jury found probable cause.

Assignment of Error VI:
The trial court committed plain error when it failed to instruct the jury that it must be unanimous in its determination as to the conduct of Mr. Scott that constituted gross sexual imposition and the alleged rape for which Mr. Scott was convicted.

Assignment of Error VII:
The trial court erred when it allowed the admission of multiple hearsay evidence.

Assignment of Error VIII:
The state improperly bolstered the testimony of [A.R.] by her great-aunt.

Assignment of Error IX:
Mr. Scott was denied the effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Section 10, of the Ohio Constitution.

Assignment of Error X:
Mr. Scott cannot be classified under either Adam Walsh Act or Ohio's Megan's Law.

Assignment of Error XI:
The convictions are allied offenses and must be merged.

On August 24 2009, the state appellate court *sua sponte* stayed Scott's appeal  pending *en banc* review by the Ohio Supreme Court of *State v. Santiago*, Case No. 91623, which contained an issue regarding the constitutionality of the "Adam Walsh" error claimed in Scott's case.  While the appeal was pending, Scott filed a variety of motions to void the trial court's judgment, to correct the appellate briefs, and to state a due process violation.  *See* Answer, p. 7 n.5.  All were denied without opinion.  On July 1, 2010, the state appellate court lifted its stay, and on July 12, 2010 it journalized an opinion affirming the judgment of the trial court.  Scott moved for reconsideration pursuant to Ohio App. R. 26(A), and the appellate court denied the motion on July 27, 2010.  Scott again moved for reconsideration on July 18, 2011, and the state appellate

court again denied the motion.

Scott, *pro se*, timely filed a notice of appeal to the Ohio Supreme Court.  In his memorandum in support of jurisdiction, Scott asserted two propositions of law:

> Proposition of Law No. 1:  Person cannot be convicted of offenses charged in an indictment that are not proven or argued at trial by prosecutor.

> Proposition of Law No. 2:  A prosecution using other offenses not charged in an indictment as evidence is prejudicial to appellant's trial and it does violate due process of law.

(Capitalization and punctuation altered from the original.)  The state public defender's office also filed a memorandum in support of jurisdiction in which it asserted nine propositions of law:

> Proposition of Law I:
>
> > In child victim cases, an indictment may allege that offenses occurred within a fairly broad time frame.  However, a defendant cannot be convicted for offenses that are not proven to have occurred within the time frame alleged in the particular count of conviction.

> Proposition of Law II:
>
> > A defendant is denied the right to indictment and the right to due process when vague and overlapping counts in the indictment preclude a court of appeals from being able to ascertain that the defendant was convicted for the same offense for which the grand jury found probable cause to indict.

> Proposition of Law III:
>
> > A trial court commits plain error when it fails to instruct the jury that it must be unanimous in its determination as to the conduct that the jury believes constitutes a particular offense.

> Proposition of Law IV:
>
> > Testimony from a social worker that child abuse has occurred is inadmissible when the testimony is based solely on the alleged victim's statements.

7

Propositions of Law V and VI:

> A trial court errs when it allows an alleged crime victim to be corroborated by hearsay testimony of others who have no first-hand knowledge and merely spoke with the alleged victim, and by testimony from another that the alleged victim's hearsay account was believable.

> Specific citation to the record in a Statement of Facts, combined with citations to the appropriate range of pages in the Argument, adequately advise a court of appeals of where in the record an error occurs.

Proposition of Law VII:

> Gross sexual imposition against a child under 13 is not a strict liability offense.  The act of sexual contact must be recklessly performed.

Proposition of Law VIII:

> Mr. Scott was denied the effective assistance of counsel.

Proposition of Law IX:

> The Adam Walsh Act does not apply to persons whose offenses were committed prior to the AWA's effective date.

On December 1, 2010, the Ohio Supreme Court accepted jurisdiction as to propositions of law VII and IX in the public defender's brief, then it stayed the appeal pending decisions in *State v. Dunlap*, Case No. 2009-0477, and *State v. Williams*, Case No. 2009-0088.  On October 20, 2011, after those cases had been decided, the Ohio Supreme Court remanded Scott's case to the state appellate court for application of the holdings in *Williams* and *Dunlap*.

During the pendency of his direct appeal, Scott filed an application for reopening his direct appeal pursuant to Ohio App. R. 26(B).  In his application, Scott raised as assignments of error allegations that appellate counsel had been ineffective for failing to raise the following claims:

8

Assignment of Error I:
Appellant was deprived of his rights to a grand jury indictment, due process and a fair trial pursuant to Art. I section 10 of the Ohio Constitution, and the Fifth, Sixth, and Fourteenth Amendments to the U. S. Constitution when the indictments failed to give notice of the offenses charged to enable him to mount a defense.

Assignment of Error II:
Trial court committed prejudicial error by allowing the prosecutor to try this cause on the basis of offenses not charged in the indictment.

Assignment of Error III:
The jury verdict, the conviction, and sentencing violates [sic] the Double Jeopardy Clause of both the Ohio and the U.S. Constitutions, as appellant was convicted of the same offense he was acquitted of (G.S.I.) and of allied offenses (G.S.I. and attempted rape).

Assignment of Error IV:
Defense counsel's failure to consult with client to build a defense, failure to investigate, to secure witnesses, or to object to defects in the indictment, or the admission of offenses not charged as evidence denied appellant of effective assistance of counsel and a fair trial pursuant to the Sixth Amendment to the U.S. Constitution.

Assignment of Error V:
Trial court erred when it denied appellant's Rule 29 motion after no evidence was presented to support counts in the indictment.

Assignment of Error VI:
Trial court committed prejudicial error when it failed to amend indictment to charge offenses alleged by A.R. during the trial.

(Capitalization and punctuation altered from the original.)  While the appeal was pending, Scott filed another motion to reverse the judgment against him, which the appellate court denied.  In adjudicating the appeal, the state appellate court determined that Scott's first, second, third, fifth, and sixth assignments of error had been decided on appeal and that reconsideration of those claims was barred by *res judicata*.  The appellate court also found that assignment of error four was not supported by citation to evidence in the record and, for that reason, was not the proper subject of a motion to

9

reopen.  Consequently, the appellate court denied Scott's motion to reopen.  Scott did not appeal this decision to the Ohio Supreme Court.

Also during the pendency of his direct appeal, Scott moved in the trial court on March 29, 2011 for merger of his convictions for attempted rape and gross sexual imposition.  The trial court denied the motion without a hearing and without opinion on March 31, 2011.

On May 13, 2011, Scott petitioned the trial court pursuant to Ohio Rev. Code § 2953.21 to vacate the judgment against him.  In support of his petition, he asserted four constitutional claims:

Claim Number One:

Carbon copy indictment violated due process.  It failed to give notice.

Claim Number Two:

Sentence violates the Double Jeopardy Clause of the Fifth and Fourteenth Amend.

Claim Number Three:

Trial court abused its discretion by giving more than minimum sentence.

Claim Number Four:

Defendant-petitioner received ineffective assistance of counsel.

(Capitalization and punctuation altered from the original.)  On May 20, 2011, the state appellate court denied the petition as untimely and the claims as barred by *res judicata*. Scott did not appeal this decision.

On July 18, 2011, Scott filed in the state appellate court a motion for merger of his convictions and for re-sentencing.  On  July 21, 2011, the state appellate court

10

denied the motion.  Scott did not appeal this decision to the Ohio Supreme Court.

On December 8, 2011, the state appellate court, on remand from the Ohio Supreme Court, applied the holdings in *Williams* and *Dunlap* to Scott's case.  In applying *Williams*, the appellate court found that Scott's classification pursuant to the Adam Walsh Act was constitutional because it occurred after enactment of the Ohio Senate Bill embodying that act.  In applying *Dunlap*, the appellate court found that (1) the *mens rea* of sexual contact was "purpose"; (2) Scott's indictment was permissible despite the absence of a *mens rea* because it tracked the language of the offense statute and because the jury was properly instructed on the element of sexual contact in Scott's case.  The state appellate court, therefore, affirmed the judgment of the trial court.

On December 16, 2011, the state applied to the state appellate court for reconsideration of its December 8, 2011 decision.  The state argued that the Adam Walsh Act could not be applied to Scott but that Megan's law could be.  The state appellate court denied the state's application on January 10, 2012.

On February 24, 2012, Scott timely filed in the Ohio Supreme Court a notice of appeal of the state appellate court's decisions of December 16, 2011 and January 10, 2011.  In his memorandum in support of jurisdiction, Scott asserted two propositions of law:

> Proposition of Law I:
>
> > The Adam Walsh Act does not apply to persons whose offenses were committed between July 1, 2007 and January 1, 2008, the Adam Walsh Act's effective date.

Proposition of Law II:

> It is plain error to fail to instruct a jury that sexual contact requires a defendant to have a purpose to touch one of the erogenous zones described in R.C. 2907.01(B).

The state supported accepting jurisdiction as to the first proposition of law, but not the second.  On May 9, 2012, the Ohio Supreme Court accepted jurisdiction over Scott's appeal.  On December 18, 2012, the Ohio Supreme Court dismissed Scott's second proposition of law as improvidently granted but reversed the judgment of the court of appeals as to Scott's first proposition of law.  *State v. Scott*, ___ N.E.2d ___, 2012 WL 6582524 (Ohio S.Ct. December 18, 2012).  The court then remanded the case to the trial court to hold a sex-offender classification hearing pursuant to *In re Bruce S.*, 134 Ohio St.3d 477, 983 N.E.2d 350 (2012).  The trial court has not yet acted on that remand.[3]

Scott filed in this court a petition for writ of habeas corpus on May 10, 2012. He raises four grounds[4] for relief:

---

[3]  Scott's classification as a sex offender is not related to the claims he asserts in his habeas petition, and the issue of his classification deals exclusively with Scott's sentence. The four grounds for relief that he raises in his habeas petition exclusively address his conviction.  An individual may petition for federal habeas relief from a judgment of conviction while state action is pending with respect to his sentence.  *See Burton v. Stewart*, 549 U.S. 147 (2007).

[4]  Although Scott states four grounds for relief in his petition, he states six grounds for relief in his Reply, adding the following:

> Ground five:  The trial court erred when it allowed the DCFS social worker to testify that sexual conduct had occurred.

> Ground six:  The convictions are allied offenses and must be merged.

As these grounds for relief were not raised in the initial petition, they are waived.  The court

12

**GROUND ONE:**  Conviction obtained by violation of due process when indictment failed to distinguish multiple identically worded counts.

**Supporting Facts:**  The seventeen count indictment contained six carbon copy counts of rape for victim one and multiple duplicate counts of rape (counts 11 & 12 and 14 & 15) duplicate counts of G.S.I. (counts 9 & 10) plus two counts of G.S. I. whose timeframes overlap, i.e. count 13, Aug 1, 2007 to Sept. 27, 2007 and count 16, July 1, 2007 to Aug 31, 2007 all for victim two which denys [*sic*] notice and protection from double jeopardy.

**GROUND TWO:**  Insufficient evidence to sustain conviction.

**Supporting Facts:**  The conviction counts of the indictment "counts 16 and 17" charges gross sexual imposition and attempted [rape] occurring around July 1, 2007 thru Aug. 31, 2007.  But victim two alleges three incidents once each at the ages of 11, 12 and specifically on her 13th birthday.  On the latter two incidents she alleges sexual intercourse only and she presented no timeframes just ages.

**GROUND THREE:**  The convictions are against the manifest weight of the evidence.

**Supporting Facts:**  Seven of the ten counts of the indictment related to victim two are during the age of 12 (counts 11 thru 17) which include the conviction counts and four of the acquitted counts including three counts of rape and one count of G.S. I., but the victim alleges only one incident of vaginal intercourse at the age of twelve.

**GROUND FOUR:**  Ineffective assistance of counsel.

**Supporting Facts:**  Trial counsel failed to sever the trial of victim one from the trial of victim two which was allegedly twenty years apart.  He also failed to object to carbon copy indictment and no bill of particulars to differentiate the identical counts of the indictment.  To object to the D.C.F.S. social worker's testimony that he believed abuse occurred based on his interview with alleged victim two.

(Punctuation altered from the original).  Respondent filed an Answer/Return of Writ on

December 5, 2012.  Doc. No. 12.  Scott filed a Reply on January 18, 2013.  Doc. No.

17.  Scott also filed on January 18, 2013 and March 20, 2013 motions for release from

─────────────────────

also notes that both of these grounds for relief rest primarily on state law and, under most circumstances, cannot serve as a basis for federal habeas relief.

custody.  Doc. Nos. 16, 19.  Respondent opposes these motions.  Doc. Nos. 18, 20.

Thus, the petition and motions are ready for decision.

II

*A.  Jurisdiction*

The Court of Common Pleas of Cuyahoga County, Ohio sentenced Scott.  Scott

filed his writ of habeas corpus in the Northern District of Ohio and raises claims

regarding the constitutionality of his incarceration under 28 U.S.C. § 2254.

> Writs of habeas corpus may be granted by the Supreme Court, any justice
> thereof, the district courts and any circuit judge within their respective
> jurisdictions. . . . Where an application for a writ of habeas corpus is made by a
> person in custody under the judgment and sentence of a State court of a State
> which contains two or more Federal judicial districts, the application may be filed
> in the district court for the district wherein such person is in custody or in the
> district court for the district within which the State court was held which convicted
> and sentenced him and each of such district courts shall have concurrent
> jurisdiction to entertain the application.

28 U.S.C. § 2241(a ) & (d).  Cuyahoga County is within this court's geographic

jurisdiction.  This court has jurisdiction over Scott's petition.

Respondent contends, however, that the court lacks jurisdiction over portions of

Scott's first ground for relief and over his third ground for relief.  In his first ground for

relief, Scott claims that the indictment denied him due process because it contained

multiple, identically-worded counts that failed to distinguish themselves from one

another.  The result, according to Scott, was a denial of notice of the individual crimes of

which he was accused and a violation of his protections against double jeopardy.  In

particular, Scott asserts that (1) the first six counts of rape were "carbon copies" of one

another; (2) counts 11 and 12 were duplicate counts of rape; (3) counts 14 and 15 were

duplicate counts of rape; (4) counts 9 and 10 were duplicate counts of gross sexual

14

imposition; and (5) the time frames for counts 13 for rape and 16 for gross sexual imposition overlapped.  This, according to Scott, made it impossible to distinguish between these counts.

Respondent answers that these claims are not cognizable in federal courts because they fail to present an actual case or controversy pursuant to Article III, sect. 2 of the United States Constitution.  According to respondent, Scott was found guilty only of counts 16, gross sexual imposition, and count 17, attempted rape.  Thus, respondent argues that Scott's claims regarding confusion among the first six counts of rape, between counts 11 and 12, between counts 14 and 15, and between counts 9 and 10 are moot and fail to demonstrate a threatened or actual injury necessary for an actual case or controversy.  Moreover, respondent continues, the jury found Scott not guilty of gross sexual imposition as stated in count 13, but guilty of gross sexual imposition as stated in count 16.  As the jury had no trouble distinguishing between these two counts, respondent concludes, Scott again fails to demonstrate that confusion between counts 13 and 16 resulted in a threatened or actual injury required for federal jurisdiction.

Article III, sect. 2 of the United States Constitution requires that federal jurisdiction be limited to "cases" or "controversies."  That limitation mandates that a party bringing an action have standing, which requires that the party have an actual or threatened injury or claim.  *Lewis v. Continental Bank Corp.*,494 U.S. 472, 477 (1990); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 476 n.13 (1982); *see also United States v. Van*, 931 F.2d 384, 387 (6th Cir. 1991).  A court evaluates a party's standing by determining "whether the plaintiff has 'alleged such a personal stake in the outcome of the controversy' as to

15

warrant his invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf."  *Van*, 931 F.2d at 387 (quoting *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975)).  "[W]hen the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome," the case is moot.  *Ford v. Wilder*, 469 F.3d 500, 504 (6th Cir. 2006).

Although the court agrees that much of Scott's first ground for relief is beyond the court's jurisdiction, there is a more direct explanation for the court's lack of jurisdiction than lack of standing.  Section 2254(a) permits federal district courts to "entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Scott is in custody pursuant to a judgment against him on counts 16 and 17 of his indictment.  Grounds for relief that state a constitutional violation involving other counts are not within the scope of § 2254, since Scott is not in custody pursuant to any counts but 16 and 17.  Consequently, the court is without subject matter jurisdiction to entertain such claims.  For this reason, all of Scott's first ground for relief is beyond this court's subject matter jurisdiction except his claim that the time frames for counts 13 and 16 for gross sexual imposition overlapped, thus failing to give proper notice and violating the prohibition against double jeopardy.[5]

Respondent also argues that Scott's third ground for relief, claiming that Scott's

---

[5]  That the jury found Scott guilty of count 16 and not guilty of count 13 makes the sort of confusion that Scott alleges seem unlikely on its face.  This, however, is a factual issue pertaining to the merits of Scott's claim, not an issue that goes to Scott's standing to raise the issue or to the court's subject matter jurisdiction to consider the issue.

16

convictions were against the manifest weight of the evidence, is beyond this court's jurisdiction.  The due process clause of the Fourteenth Amendment requires that a criminal conviction be based upon proof beyond a reasonable doubt as to every fact necessary to constitute the offense charged.  *In re Winship*, 397 U.S. 358, 363-64 (1970).  The test of whether a conviction is supported by sufficient evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  A habeas court resolves all conflicting inferences in favor of the prosecution, and does not weigh the credibility of witnesses.  *Walker v. Engle*, 703 F.2d 959, 969 (6th Cir.), *cert. denied*, 464 U.S. 962 (1983).  The evidence need not be sufficient to convince the habeas court of the petitioner's guilt beyond a reasonable doubt.  *Fuller v. Anderson*, 662 F.2d 420, 435 (6th Cir. 1981), *cert. denied*, 455 U.S. 1028 (1982).  Any conviction based upon evidence sufficient to convince any rational trier of fact of the essential elements of the crime without a reasonable doubt offends the due process clause and may serve as grounds for habeas relief.

A claim that a conviction is against the manifest weight of the evidence differs from a claim that a conviction was based on insufficient evidence:

> Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence.  *Robinson, supra,* 162 Ohio St. at 487, 55 O.O. at 388-389, 124 N.E.2d at 149.  Weight of the evidence concerns "the inclination of the *greater amount of credible evidence,* offered in a trial, to support one side of the issue rather than the other.  It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them.

17

> Weight is not a question of mathematics, but depends on its *effect in inducing belief.*"  (Emphasis added.)  Black's, *supra,* at 1594.
>
> When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony.  *Tibbs,* 457 U.S. at 42, 102 S.Ct. at 2218, 72 L.Ed.2d at 661.  See, also, *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 219, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. . . .").

*State of Ohio v. Thompkins*, 78 Ohio St. 3d 380, 387-88, 678 N.E.2d 541, 546-47

(1997).  *See also Tibbs v. Florida*, 457 U.S. 31, 37-38, 38 n.11 (1982); *Jackson v.*

*Virginia*, 443 U.S. 307, 318-19 (1979).

A federal court reviewing a petition for a writ of habeas corpus has no authority to

re-weigh the credibility of witnesses at trial.  *Marshall v. Lonberger*, 459 U.S. 422

(1983).  It is incapable, therefore, of determining whether a conviction was against the

manifest weight of the evidence.  It may only determine whether a conviction was based

on *sufficient* evidence.  Scott's claim that his conviction was against the manifest weight

of the evidence, therefore, is not cognizable in federal habeas corpus.[6]  For this reason,

this claim is outside the court's jurisdiction.

---

[6]  Scott asserts in his second ground for relief that he was convicted upon constitutionally insufficient evidence.  This ground is cognizable and is addressed later in this report and recommendation.  Because a claimed conviction against the manifest weight of the evidence is judged against a higher evidentiary standard than a claimed conviction upon insufficient evidence, a state court finding that a conviction was not against the manifest weight of the evidence necessarily implies that the conviction was not upon insufficient evidence as well.  *See Nash v. Eberlin*, 2007 WL 4438008 (6th Cir. Dec. 14, 2007) (holding that a ruling by Ohio courts that a conviction is not against the manifest weight of the evidence implicitly includes a determination that the conviction was upon sufficient evidence).

For the reasons given above, all of Scott's first ground for relief except those portions of the ground pertaining to counts 13 and 16 and the entirety of his third ground for relief should be dismissed because they are not cognizable.

B.    Evidentiary hearing

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in state court proceedings.  28 U.S.C. § 2254(e)(2).  There is no need for an evidentiary hearing in the instant case.  All of Scott's claims involve legal issues which can be independently resolved without additional factual inquiry.

C.    Exhaustion of state remedies

A state prisoner must exhaust all available state remedies or have no remaining state remedies available prior to seeking review of a conviction via federal habeas corpus.  28 U.S.C. § 2254(b) and (c); *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Riggins v. McMackin*, 935 F.2d 790, 793 (6th Cir. 1991).  If any state procedures for relief remain available, the petitioner has not exhausted state remedies.  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994).

A petitioner must fairly present any claims to the state courts in a constitutional context properly to exhaust state remedies.  *Anderson v. Harless*, 489 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270 (1971); *Shoultes v. Laidlaw*, 886 F.2d 114, 117 (6th Cir. 1989).  "[O]nce the federal claim has been fairly presented to the state courts, the exhaustion requirement is satisfied."  *Picard*, 404 U.S. at 275; *see also Harris v. Reeves*, 794 F.2d 1168. 1174 (6th Cir. 1986).  The exhaustion requirement is properly satisfied when the highest court in the state in which petitioner was convicted has been

given a full and fair opportunity to rule on all the petitioner's claims.  *Manning v.*

*Alexander*, 912 F.2d 878, 881-83 (6th Cir. 1990).

The requirement that petitioners exhaust state remedies is a matter of comity

between the federal government and the states:

> The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings. . . . Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter."

*Rose v. Lundy*, 455 U.S. 509, 518 (1982) (quoting *Darr v. Burford*, 339 U.S. 200, 204

(1950)) (other citations omitted).  Because exhaustion is a matter of comity, a petition

containing unexhausted claims may be denied on the merits.  28 U.S.C. § 2254(b)(2).

Scott has no state remedies available for the claims he raises in this court.

Because no state remedies remain available to him, Scott has exhausted state

remedies for those claims.

D.    *Procedural default*

Reasons of federalism and comity generally bar federal habeas corpus review of

"contentions of federal law . . .  not resolved on the merits in the state proceeding due to

respondent's failure to raise them there as required by state procedure."  *Wainwright v.*

*Sykes*, 433 U.S. 72, 87 (1977).  When a petitioner

> has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

20

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  Procedural default occurs when a petitioner fails to present fairly to the highest state court his claims in a federal constitutional context.  *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Anderson v. Harless*,  459 U.S. 4 (1982).

If the state argues that a petitioner has procedurally defaulted her claims, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. . . . Second, the court must decide whether the state courts actually enforced the state procedural sanction.  . . . Third, the court must decide whether the state procedural forfeiture is an  "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. . . . This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. . . . [Fourth, if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate . . . that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  A default will also be excused if petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.

Respondent argues that Scott has defaulted that portion of his first ground for relief pertaining to counts 13 and 16, which alleges that the indictment violated his protection against double jeopardy, because Scott failed to raise that claim on appeal. Respondent also contends that because Scott failed to present his claim of ineffective assistance of appellate counsel to the Ohio Supreme Court, he may not use ineffective assistance of appellate counsel as cause for his failure to raise his double jeopardy

claim on appeal.

Ineffective assistance of counsel may constitute cause for failing to properly present a claim before a state court. *See Williams v. Anderson*, 460 F.3d 789, 800 (6th Cir. 2006). Counsel has been ineffective if his or her conduct falls below an objective standard of reasonableness and if there is a reasonable probability that but counsel's ineffective performance the outcome of the proceedings would have been different. *Strickland v. Washington,* 466 U.S. 668, 688, 694 (1984). Ineffective assistance of counsel may only serve as cause for a procedural default, however, if the claim of ineffective assistance of counsel itself was not procedurally defaulted or unless cause and prejudice for such default exists. *Edwards v. Carpenter,* 529 U.S. 446, 453 (2000).

Scott failed properly to raise his claimed double jeopardy violation or his claim of ineffective assistance of appellate counsel in the Ohio Supreme Court. Consequently, (1) he has defaulted his double jeopardy claim and (1) he may not use his claim of ineffective assistance of appellate counsel as cause for that default because he has also defaulted that claim.[7] Because Scott has defaulted his double jeopardy claim and fails to show cause and prejudice for that default, that portion of Scott's first ground for relief claiming that the indictment violated his protection against double jeopardy should be dismissed as procedurally defaulted.

III.

The Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA") altered the standard of review that a federal court must apply when deciding whether to grant a

---

[7] Scott does not show cause and prejudice for his default of his claim of ineffective assistance of appellate counsel.

22

writ of habeas corpus.  As amended, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim resulted in a decision that was contrary to, or involved
> an unreasonable application of, clearly established Federal law, as determined
> by the Supreme Court of the United States; or resulted in a decision that was
> based on an unreasonable determination of the facts in light of the evidence
> presented in the State court proceeding.

Under the current deferential standard of review, a writ of habeas corpus may issue only

if the state court's decision is contrary to clearly established federal law or was based

on an unreasonable determination of the facts in light of the evidence.  *Carey v.*

*Musladin*, 549 U.S. ___, 127 S. Ct. 649, 653 (2006);  *Williams v. Taylor*, 529 U.S. 362,

379-90 (2000).  Law is "clearly established" only by holdings of the Supreme Court, not

its dicta, and the law must be clearly established at the time of the petitioner's

conviction.  *Carey*, 127 S. Ct., at 653.

Courts must give independent meaning to the phrases "contrary to" and

"unreasonable application of" in § 2254(d)(1):

> Section 2254(d)(1) defines two categories of cases in which a state prisoner may
> obtain federal habeas relief with respect to a claim adjudicated on the merits in
> state court.  Under the statute, a federal court may grant a writ of habeas corpus
> if the relevant state-court decision was either (1) "*contrary to* . . . clearly
> established Federal law, as determined by the Supreme Court of the United
> States," or (2) "*involved an unreasonable application of* . . . clearly established
> Federal law, as determined by the Supreme Court of the United States."

*Williams*, 529 U.S. at 404-05 (emphasis added by the quoting court).  A decision is

"contrary to" clearly established federal law if it reaches a conclusion opposite to that

reached by Supreme Court holdings on a question of law or if it faces a set of facts

materially indistinguishable from relevant Supreme Court precedent and still arrives at

23

an opposite result.  *Id.* at 405-06.  "A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases."  *Id.* at 405.  A decision involves an unreasonable application of federal law only if the deciding court correctly identifies the legal principle at issue and unreasonably applies it to the facts of the case at hand.  *Doan v. Brigano*, 237 F.3d 722, 729-31 (6th Cir. 2001).  The court will examine Scott's remaining grounds for relief using the deferential standard applied to state court rulings on the petitioner's claims.

A.      *Ground one:  Whether the 13th and 16th counts of the indictment violated Scott's right to due process*

In the remainder of Scott's first ground for relief, Scott contends that the overlapping time periods in the 13th and 16th counts of the indictment, both for gross sexual imposition, failed to give him proper notice of the particular crimes of which he was accused, thus violating his right to due process.  Respondent replies that Scott had constitutionally sufficient notice of the charges against him.

The Fourteenth Amendment did not incorporate the Fifth Amendment right to a grand jury indictment; thus, the obligation to obtain a grand jury indictment does not apply to the states.[8]  *Apprendi v. New Jersey*, 530 U.S. 466, 477 n.3 (2000).  Nevertheless, "basic principles of fundamental fairness" and the Notice Clause of the Sixth Amendment demand that a defendant be adequately notified of the precise nature of the charges against him, whether by indictment or by some other means.  *Russell v.*

---

[8]  Scott argues in his petition that the Fifth Amendment requires that all defendants be charged in an indictment.  Scott errs.  The Fifth Amendment requirement applies only to *federal* defendants, not state defendants.

*United States*, 369 U.S. 749, 765 (1962).  Fair notice requires that a defendant be notified of the elements of the offense charged and be sufficiently apprised of what the defendant "must be prepared to meet."  *Id.* at 763 (quoting *Cochran and Sayre v. United States*, 157 U.S. 286, 290 (1896).

The state appellate court decided this issue on state constitutional grounds using state case law in support of its decision.  The Ohio Supreme Court declined jurisdiction over this claim.  Thus, because there is no state court decision to which this court must defer on the federal constitutional question, this court must decide the issue *de novo.* *See Durr v. Mitchell*, 487 F.3d 423, 432 (6th Cir. 2007); *Shaleb v. Burghuis,* 2012 WL 3893106, at *14 (6th Cir. Sept. 7, 2012).

Count 13 alleged gross sexual imposition with a sexually violent predator specification occurring between August 1, 2007 through September 27, 2007.  Count 16 alleged gross sexual imposition with a sexually violent predator specification occurring between July 1, 2007 through August 31, 2007.  Both counts cited the section of the Ohio Revised Code that Scott allegedly violated, and that section specified the elements of the crime of gross sexual imposition.  *See* Ohio Rev. Code § 2907.05(A)(1). Although counts 13 and 16 alleged the same violation and although the time periods for the two counts overlapped, the bill of particulars provided to Scott differentiated between the two alleged crimes.  The bill of particulars alleged that Scott rubbed, squeezed, and licked the victim's breast in count 13 and that he rubbed the victim's breast in count 16.  In addition, the written summary of Scott's statement to police after his arrest (which was provided to Scott in discovery) indicated that he knew who the alleged victim was during the times stated in counts 13 and 16.  Consequently, Scott

25

was informed and had knowledge regarding the elements of the crimes of which he was accused, the time period during which those crimes were alleged to have occurred, and the particular, distinguishable behaviors of which he was accused in committing each crime.  Moreover, Scott knew the identity of the alleged victim.  He was, therefore, informed of what he "must be prepared to meet" at trial.  Thus, Scott had constitutionally sufficient notice of the charges against him.

Scott's claims that he did not have notice of the precise nature of the crimes of which he was charged and that there was confusion between counts 13 and 16 because of the overlapping time periods are without merit.  Moreover, the fact that the jury acquitted Scott of count 13 while convicting him of count 16 shows that the jury distinguished between the two counts and that Scott was not prejudiced by the manner in which the state pursued the charges.  For these reasons, the remainder of Scott's first ground for relief should be dismissed.

*B. Ground two:  Whether the evidence supporting Scott's conviction was insufficient*

Scott claims in his second ground for relief that the evidence against him at trial was constitutionally insufficient to support his convictions in counts 16 and 17.  Respondent denies this contention.

A petitioner who claims that the evidence at trial was insufficient for a conviction must demonstrate that after viewing the evidence in the light most favorable to the prosecution no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *Scott v. Mitchell,* 209 F.3d 854, 885 (6th Cir. 2000).  This is the standard whether the evidence against the petitioner is direct or circumstantial.  *Spalla v. Foltz,* 788 F.2d 400, 402 (6th

26

Cir. 1986).  It is not necessary that the evidence exclude every reasonable hypothesis

except that of guilt. *Holland v. United States,* 348 U.S. 121, 140 (1954).

> The role of the reviewing court in considering such a claim is limited:
>
> A reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the trial court.  *Marshall v. Lonberger,* 459 U.S. 422, 434 (1983).  It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony.  *Neal v. Morris,* 972 F.2d 675, 679 (6th Cir. 1992).  An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims.  *Gall v. Parker,* 231 F.3d 265, 286 (6th Cir. 2000).  The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim.  *Ibid.*

*Matthews v. Abramajtys*, 319 F.3d 780, 788-89 (6th Cir. 2003).  "[A]ttacks on witness

credibility are simply challenges to the quality of the government's evidence and not to

the sufficiency of the evidence."  *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002)

(quoting *United States v. Adamo,* 742 F.2d 927, 935 (6th Cir.1984)).

The state appellate court reviewing this claim during Scott's direct appeal wrote

the following in denying Scott relief on this claim and on the more demanding claim of

conviction against the manifest weight of the evidence:

> {¶ 28} Count 16 of the indictment charged Scott with gross sexual imposition of a victim under the age of 13 in violation of R.C. 2907.05(A)(4).  Count 17 of the indictment charged Scott with attempted rape of a victim under the age of 13 in violation of R.C. 2923.02 and R.C. 2907.02(A)(1)(b). Both of the above charges set forth a time frame of July 1, 2007 through August 31, 2007.
>
> {¶ 29} Scott asserts that there was insufficient testimony to establish that the sexual conduct or sexual contact occurred within the time frame alleged in the indictment.  He further argues that the conclusion that the offenses occurred during the time frames in the indictment is against the manifest weight of the evidence.
>
> {¶ 30} "Ordinarily, the state is given a certain amount of latitude in child sexual abuse cases and is not strictly held to proving that a crime occurred during a period set forth in the indictment.  This is so partly because the specific time and

date of the offense are not elements of the offense."  (Internal citations omitted.)
*State v. Gus,* Cuyahoga App. No. 85591, 2005-Ohio-6717.  The court explained
in *State v. Robinette* (Feb. 27, 1987), Morrow App. No. CA-652:  "We note that
these particular cases often make it more difficult to ascertain specific dates.
The victims are young children who may reasonably be unable to remember
exact times and dates of psychologically traumatic sexual abuses.  This is
especially true where the crimes involve several instances of abuse spread out
over an extended period of time.  The problem is compounded where the
accused and the victim are related or reside in the same household, situations
which often facilitate an extended period of abuse.  An allowance for
reasonableness and inexactitude must be made for such cases considering the
circumstances."  (Internal citation omitted.)  Additionally, the Ohio Supreme Court
has found that when precise dates and times are not essential elements of the
offenses and the inexactitude of the indictment as to the date is without material
detriment to the preparation of a defense, the omission is without prejudice.
*State v. Sellards* (1985), 17 Ohio St.3d 169, 171-172, 478 N.E.2d 781.

{¶ 31} In this case, the precise dates and times the criminal conduct occurred are
not essential elements of the charged offenses.  A review of the record reflects
that victim 2 was a minor at the time of the abuse, she was related to Scott, she
spent many nights at her grandmother's home where Scott also stayed, and
there were multiple instances of alleged sexual abuse.  Victim 2 provided a
detailed account of each instance of alleged sexual abuse.  Testimony from other
witnesses supported her testimony.  Under these circumstances, an allowance
for inexactitude must be made, and we cannot find that Scott suffered any
prejudice.

{¶ 32} Scott also asserts that there was no evidence of any attempted rape that
was not consummated.  He further argues that the jury, which was hung on
several counts, rendered verdicts that did not "square with the evidence."  We
find no merit to these arguments as it was within the province of the jury to
believe some of victim 2's testimony but disbelieve other portions of her
testimony.

{¶ 33} We find that, after viewing the evidence in a light most favorable to the
prosecution, any rational trier of fact could have found the essential elements of
the crimes proven beyond a reasonable doubt.  Additionally, upon a thorough
review of the record, we find that Scott's convictions were not against the
manifest weight of the evidence and that the jury did not lose its way or create a
manifest miscarriage of justice.  Scott's third and fourth assignments of error are
overruled.

*State v. Scott*, 2010 WL 2636607, at *4-*5 (Ohio App. July 1, 2010).  The court also

wrote elsewhere in the opinion as follows:

28

[T]here was ample evidence upon which the jury could conclude that the acts of gross sexual imposition were separate and distinct, or committed with a separate animus, from the acts of rape.  Victim 2 testified to multiple instances of sexual abuse, which included acts of cunnilingus, licking her chest, and vaginal intercourse.  There was evidence upon which Scott could be convicted of both gross sexual imposition and attempted rape.

*Id.* at *9.

Scott argues that the state appellate court erred because (1) there was no evidence adduced at trial of gross sexual imposition between July 1, 2007 and August 31, 2007 and (2) there was no evidence of an attempted rape anywhere in the record. The court will examine each of these assertions in turn.

> 1. *Whether there was evidence of gross sexual imposition between July 1, 2007 and August 31, 2007*

In its instructions to the jury, the trial court told the jury that gross sexual imposition consisted of sexual contact with an individual who was not the offender's spouse.  Transcript of Proceedings ("Tr."), v. 3, Answer, Attachment 6, p. 542.  The court also defined "sexual contact" as "any touching of an erogenous zone of another, including without limitation to thigh, genitals, buttock, pubic region, or if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."  *Id.* at 538.

Victim 2 testified at trial as follows regarding an encounter in her grandmother's house on Kinsman Ave. at an unidentified time in 2007:

. . . I had heard somebody walk in the room and I had -- I had turned around a little bit and I had saw [Scott] standing right there.  And then that's when he had came in there, and he had pulled the covers off of me, and he had pulled by, um, my pants down and then he had pulled his . . . jeans . . . he had pulled them down.  And then he got on top of me.  And then that's when he had stick his penis is my vagina and then he was -- then he, after that he was -- he had got up. And then he had pulled the cover back over me, and he pulled my pants up, and

29

he pulled his up and he went in the bathroom.

Tr., v. 2, Answer, Attachment 5, pp. 349-50.

A reasonable jury that believed some but not all of victim 2's testimony could have found Scott guilty of gross sexual imposition.  Scott's contention that the state appellate court erred in determining that there was sufficient evidence to sustain a conviction for gross sexual imposition is not well taken.   As regards the time frame, as was noted earlier, the victim's grandmother testified that she had moved into the house at which the victim said this incident occurred in April 2007.  This supports placing the incident in July or August of 2007, and it makes reasonable the state appellate court's determination that victim 2's evidence was inescapably imprecise but not prejudicial or otherwise unacceptable.  Consequently, Scott fails to undermine the state court's finding that there was sufficient evidence to permit a jury to find that Scott was guilty of gross sexual imposition involving victim 2 between July 1, 2007 and August 31, 2007.

> 2.      *Whether there was sufficient evidence of attempted rape between July 1, 2007 and August 31, 2007*

The court instructed the jury that attempted rape consisted of an attempt to engage in sexual conduct with a person who is not the spouse of the perpetrator and the perpetrator purposely compelled the victim to comply by force or threat of force.  Tr., v. 2 at 533.  The court defined "sexual conduct" as including "vaginal intercourse . . . , anal intercourse, fellatio, cunnilingus between persons, regardless of sex."  *Id.*  The court added,

> A criminal attempt is when one purposely does or fails to do anything which is an act, in this case does do anything which is an act constituting a substantial step in the course of conduct planned to culminate in his commission of a crime thereof.  To constitute a substantial step, the conduct must be strongly

30

corroborative of the actor['] criminal purpose.

*Id.* at 546.

The jury could have believed part, but not all, of victim 2's testimony and found that Scott intended to rape victim 2 and took steps toward that by removing her covers and panties, pulling down his own pants, and laying on top of her but also found that he did not consummate the rape.  This evidence, if believed by the jury, would have shown Scott took a substantial step in furtherance of the rape and would support a conviction for attempted rape.  Whether the jury also had sufficient evidence in the victim's testimony to convict him of actual rape is beside the point.  As the state appellate court observed, the jury is free to believe as much or as little of the victim's testimony as it chooses.  Scott's argument that there is no evidence of attempted rape between July 1, 2007 and August 31, 2007 is not well-taken, and that argument fails to undermine the decision of the state appellate court.

The state appellate court found that there was constitutionally sufficient evidence produced at trial to convict Scott of gross sexual imposition and attempted rape as a result of his acts between July 1, 2007 and August 31, 2007.  Scott fails to show by clear and convincing evidence that the court erred in its statement of the facts, reached unreasonable conclusions, or erred in its statement of the law.  For these reasons, Scott's second ground for relief should be dismissed as without merit.

B.    *Ground four:  Whether Scott's trial counsel was constitutionally ineffective*

Scott contends in his fourth ground for relief that the performance of his trial counsel was constitutionally ineffective because trial counsel failed to (1) move to sever the counts related to victim 1 from those related to victim 2 for purposes of trial; (2)

31

challenge allegedly undifferentiated counts in the indictment and the lack of a bill of particulars to provide specificity sufficient to differentiate those counts; and (3) object to the social worker's testimony that he believed victim 2 was abused based on his interview with the victim.  Respondent denies that the failure to sever was constitutionally ineffective assistance and denies Scott's statement of the facts and assertions of prejudice with respect to the other two allegations.

The standard for determining whether petitioner's counsel was ineffective is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Strickland*, 466 U.S. at 686; *see also Groseclose v. Bell*, 130 F.3d 1161, 1167 (6th Cir. 1997).  A claim of ineffective assistance of counsel has two components:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

*Strickland*, 466 U.S. at 687; *see also Groseclose*, 130 F.3d at 1167.

The first prong of this test, the showing of deficient performance, is an objective one:  "[T]he proper standard for attorney performance is that of reasonably effective assistance. . . . When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness," as judged by "prevailing professional norms." *Strickland*, 466 U.S. 687-88; *see also Groseclose*, 130 F.3d at 1167.  Scrutiny of

32

counsel's performance is highly deferential to avoid second-guessing an adverse

decision.   *Strickland*, 466 U.S. at 689; *see also Groseclose*, 130 F.3d at 1167.  The

petitioner "must overcome the presumption that, under the circumstances, the

challenged action 'might be considered sound trial strategy.'"  *Strickland*, 466 U.S. at

689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Groseclose*, 130

F.3d at 1167.  A court reviewing counsel's performance "must judge the reasonableness

of counsel's challenged conduct on the facts of the particular case, viewed as of the

time of counsel's conduct."  *Strickland*, 466 U.S. at 690.  "[S]trategic choices made after

thorough investigation of law and facts relevant to plausible options are virtually

unchallengeable . . . ."  *Id.* at 690-91 (1984); *see also Groseclose*, 130 F.3d at 1167-6.

The second prong of the test for ineffective assistance of counsel is whether the

error prejudiced petitioner:

> An error by counsel, even if professionally unreasonable, does not warrant
> setting aside the judgment of a criminal proceeding if the error had no effect on
> the judgment.  The purpose of the Sixth Amendment guarantee of counsel is to
> ensure that a defendant has the assistance necessary to justify reliance on the
> outcome of the proceeding. Accordingly, any deficiencies in counsel's
> performance must be prejudicial to the defense in order to constitute ineffective
> assistance under the Constitution.

*Strickland*, 466 U.S. at 690-91 (citations omitted); *see also Groseclose*, 130 F.3d at

1168.  Further "the burden rests on the accused to demonstrate a constitutional

violation."  *United States v. Cronic*, 466 U.S. 648, 658 (1984).  Showing a constitutional

violation requires showing that "counsel's unprofessional errors so upset the adversarial

balance between defense and prosecution that the trial was rendered unfair and the

verdict rendered suspect."  *Nix v. Whiteside*, 475 U.S. 157, 175 (1986).  "Unreliability or

unfairness does not result if the ineffectiveness of counsel does not deprive the

33

defendant of any substantive or procedural right to which the law entitles him." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).  A reviewing court must ask itself "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Strickland*, 466 U.S. at 695; *see also Groseclose*, 130 F.3d at 1168.

Determining whether counsel was ineffective is a mixed question of law and fact. *See Williams v. Taylor*, 529 U.S. 362 (2000).  When a federal court reviews the conclusions of a state court regarding counsel's alleged ineffectiveness, both the legal and the factual tests for determining whether habeas relief is warranted are brought into play.  *Id.* at 395-96.  That is, the reviewing court must determine whether the decision of the state court regarding counsel's alleged ineffectiveness (1) was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding and (2) resulted in a decision that was contrary to or involved an unreasonable application of a holding of the Supreme Court.  *Id.*  There are two ways in which a state court decision may involve an unreasonable application of a holding of the Supreme Court:

> First, a state-court decision involves an unreasonable application of this Court's precedent if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case.  Second, a state-court decision also involves an unreasonable application of this Court's precedent if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.

*Id.* at 407.

An ineffective assistance of counsel claim presents a mixed question of law and

34

fact for which the state court determinations are subject to the following review:

> [I]n a federal habeas challenge to a state criminal judgment, a state court conclusion that counsel rendered effective assistance is not a finding of fact binding on the federal court to the extent stated by 28 U.S.C. § 2254(d). Ineffectiveness is not a question of "basic, primary, or historical fac[t.]"  Rather, . . . it is a mixed question of law and fact.  Although state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of § 2254(d), and although district court findings are subject to the clearly erroneous standard of Federal Rule of Civil Procedure 52(a), both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of law and fact.

*Strickland*, 466 U.S. at 698 (citations omitted); *Groseclose*, 130 F.3d 1161.

Counts 1-7 of the indictment related to victim 1; counts 8-17 related to victim 2.

Scott contends that his counsel's decision not to move to sever these counts and try them separately unduly prejudiced him and resulted in his conviction.  The state appellate court reviewing the corresponding state claim on direct appeal correctly recited the *Strickland* standard for ineffective assistance of counsel and then wrote as follows:

> {¶ 58} Scott was charged in one indictment with several counts involving sexual conduct and/or contact with two different victims.  Scott argues that his trial counsel was ineffective for failing to seek to have the counts involving victim 1 severed from the counts involving victim 2.

> {¶ 59} A defendant may move to sever charges under Crim. R. 14, which provides in relevant part: "If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment * * *, the court shall order an election or separate trial of counts, grant a severance of defendants, or provide such other relief as justice requires."

> {¶ 60} In deciding whether severance is proper, the Ohio Supreme Court has stated as follows:  "Where the evidence of each of the joined offenses would be admissible at separate trials, severance is not required because prejudice due to the cumulation of evidence or the inference of a criminal disposition is largely absent.  Moreover, the jury is capable of segregating the proof of multiple charges when, as in the present case, the evidence of each crime is uncomplicated." (Citations omitted.)  *State v. Hamblin* (1988), 37 Ohio St.3d 153,

158-159, 524 N.E.2d 476.

{¶ 61} Scott has not set forth any legal basis that would have entitled him to a severance in this matter. Counsel may have reasonably believed that one trial would be the best strategy to try and persuade the jury to return a verdict of not guilty on all counts of the indictment at the same time. Further, Scott failed to demonstrate that he was prejudiced by joinder of the offenses. Accordingly, we cannot conclude that counsel was ineffective in failing to make a motion to sever.

*State v. Scott*, 2010 WL 2636607, at *7-*8 (Ohio App. July 1, 2010).

Scott makes no effort to demonstrate that the state appellate court erred in its statement of facts, conclusions, or statement of law. Rather, he merely asserts that the unopposed joinder of all counts resulted in prejudice so great that it amounted to abandonment by counsel. Such assertions are merely speculative and conclusory.

The state appellate court concluded that (1) counsel had no basis for seeking severance; (2) the failure to move for severance could be regarded as sound trial strategy; and (3) Scott did not demonstrate that he was prejudiced by the joinder. The state appellate court's determination is a reasonable application of the law. Most important, the court's dismissal of several counts of the indictment and the jury's not guilty finding on all but two counts arising from a single incident demonstrates that the jury was able to reach separate determinations as to each count of the indictment. Scott was not, therefore, prejudiced by the joinder of the counts against him. For these reasons, Scott's contention that trial counsel was ineffective for failing to seek severance of the counts related to victim 1 from the counts related to victim 2 is without merit.

Scott also argues that trial counsel was ineffective for failing to challenge allegedly undifferentiated counts in the indictment and the lack of a bill of particulars to

36

provide specificity sufficient to differentiate those counts.  This argument is without merit because it is factually wrong and because Scott was not prejudiced by the alleged error.  As has already been shown, the state *did* provide Scott a bill of particulars that differentiated the counts against him.  Moreover, as just described, the jury's verdicts, which found Scott not guilty on all but two counts arising from a single incident, demonstrate that the jury was able to reach separate determinations as to each count of the indictment.  As Scott's factual premise is wrong and as he cannot show prejudice, his contention that trial counsel was ineffective for failing to challenge allegedly undifferentiated counts in the indictment and the absence of a bill of particulars differentiating those counts is not well-taken.

Finally, Scott argues that trial counsel was ineffective for failing to object to the social worker's testimony that he believed that victim 2 was abused based on his interview with the victim.[9]  Again, Scott's argument is not well-taken because it is factually wrong.  The social worker in question, Steve Lee Collins ("Collins"), described his investigation of victim 2's allegations against Scott.  The social worker then participated in the following colloquy:

> Q.    Okay.  Now, what exactly -- Mr. Collins, what exactly is a disposition?
>
> A.    A disposition, as best I can describe it or define it, is a finding we make at the end of our case when we are in the process of transmitting it for closure.  It can be -- the three general ones we have are unsubstantiated, substantiated, indicated, and substantiated [sic].

---

[9]  Scott never presented to any state court his claim that counsel's failure to object to the social worker's testimony constituted ineffective assistance of counsel.  That claim, therefore, was procedurally defaulted.  The state, however, does not assert that default to block consideration of this claim.

Q.      Okay.  Now, as it relates to this particular matter, was there a disposition that you made, based upon your investigation of this matter?

A.      Yes, there was.

Q.      And what was your disposition?

                              [DEFENSE COUNSEL]:    Objection.

                              THE COURT:              Overruled.

A.      The disposition on this case, we indicated it.

BY [COUNSEL FOR THE STATE]:

Q.      All right.  And what's indicated?

A.      . . .  It's kind of the preponderance of the evidence.
        We have reason to believe that something happened.  We can't outright say beyond a shadow of a doubt that it did happen. . . .

Q.      All right.  And what was the basis for your disposition?

A.      The interview with [victim 2], conversation with Detective Thompson, and the charges that were brought against Mr. Scott.

Tr., v. 2 at 401-02.

The transcript clearly shows that trial counsel objected to the testimony of the social worker.  Moreover, after the court overruled his objection, further objection could have had the effect of unnecessarily emphasizing the testimony.  Thus, Scott's contention that trial counsel failed to object to the "opinion testimony" of Collins is wrong, and trial counsel was not ineffective for that reason.

In sum, there is no basis for Scott's allegation that trial counsel was ineffective for failing to move to sever, for failing to challenge the indictment, or for failing to object to introduction of Collins' "opinion" testimony.  Scott's fourth ground for relief should be dismissed as without merit.

38

IV.

For the reasons given above, (1) all of Scott's first ground for relief except that portion of this ground pertaining to counts 13 and 16 of the indictment and the entirety of his third ground for relief should be dismissed because the claims are beyond the court's subject matter jurisdiction; (2) the portion of Scott's first ground for pertaining to counts 13 and 16 alleging a double jeopardy violation should be dismissed as procedurally defaulted; and (3) the remainder of Scott's grounds for relief pertaining to due process and ineffective assistance of trial counsel should be dismissed as without merit.  Because Scott's arguments are either not cognizable, defaulted, or without merit, his motions for release from custody, doc. nos. 16, 19, should be denied and his petition should be dismissed.


Date:  April 15, 2013                              s/ Nancy A. Vecchiarelli
                                                   United States Magistrate Judge


**OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See _United States v. Walters_, 638 F.2d 947 (6th Cir. 1981).  See also _Thomas v. Arn_, 474 U.S. 140 (1985), _reh'g denied_, 474 U.S. 1111.**